IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARL MERTON IRONS, II,

    Petitioner,                   No. CIV  S-05-0912 RRB KJM

  vs.

D.K. SISTO, Warden, et al.,

    Respondents.              <u>ORDER</u>

_____/

        Petitioner is a state prison inmate proceeding pro se with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges his March 2002 denial of parole for the following reasons. First, he claims there was no evidence to support the Board of Prison Terms' (BPT) decision to deny him parole, and that this refusal violated his liberty interest created by California Penal Code section 3041. Second, he claims that the BPT has failed to set a base term for him and so his term has become disproportionate to that of similar crimes. Third, he contends there is a de facto "no parole" policy in California set forth by Governor Davis and continuing under Governor Schwarzenegger, and that this policy was the reason the BPT denied his parole. <u>See</u> Pet., Mem. P. & A. at 6-8.

/////

/////

1   Petitioner has filed a motion seeking leave of the court to conduct discovery. His
2   motion asks for an order to permit him to take depositions of the following persons:
3       1. Board of Prison Terms Commissioner Leonard Munoz;
4       2. Board of Prison Terms Deputy Commissioner Robert Harmon;
5       3. Board of Prison Terms Commissioner Carol Daly; and
6       4. The Board of Prison Terms Commissioner who signed the denial of
7   petitioner's administrative appeal (along with Carol Daly) whose identity is the subject of the
8   interrogatory discussed below.
9   Petitioner seeks an order requiring respondent to answer the interrogatory
10  included as Exhibit A to the motion and to produce the documents or electronically stored
11  information contained in the request for production of documents or electronically stored
12  information included in Exhibit B to the motion. See Pet'r's Mot. for Discovery (Mot.).
13  Respondent opposes the motion based on the following four reasons, analyzed
14  below:
15      1. There is no good cause for discovery.
16      2. Petitioner's bias claim is moot following his subsequent parole hearings.
17      3. Even if the claim is not moot, petitioner's request to depose the
18  Commissioners should be denied because the deliberative process privilege applies to the
19  Commissioners.
20      4. Discovery should be denied because the mental process privilege applies to the
21  Commissioners. See Resp't's Opp'n (Opp'n).
22  I. Good Cause
23  Habeas corpus petitioners must show good cause for discovery because they are
24  not entitled to discovery as a matter of course but only when specific allegations show reason to
25  "believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is
26  . . . entitled to relief." Bracy v. Gramley, 520 U.S. 899, 908-09 (1997).

Here, petitioner has met the good cause standard set forth in <u>Bracy</u> because specific allegations of fact show reason to believe he may be entitled to relief.

Petitioner has pointed to several exhibits that lend support to an overall gubernatorial distaste for parole starting with Governor Wilson and extending to Governor Davis.  <u>See</u> Pet., Exs. Q-U.  Under <u>Bracy</u>, petitioner does not need to show that the BPT was "actually" biased in order to show good cause.  <u>Bracy</u>, 520 U.S. at 909.  Rather, it is enough for the petitioner to point to facts that "may" entitle him to relief.  <u>Id.</u>  In this case, petitioner may be entitled to relief if he ultimately can show that a "no parole" policy was the reason the BPT denied parole.  Therefore, he has demonstrated good cause.[1]

Respondent also argues petitioner should not be entitled to depose the Commissioners because petitioner failed to present the testimony of the Commissioners as evidence in the state court proceedings.  Opp'n at 4.  Petitioner alleges he did develop the record below by asking the state court for evidentiary hearings on the issues presented in his petition.  Pet'r's Reply (Reply) at 8.

A district court may not expand the record without regard to the requirements of 28 U.S.C. § 2254(e)(2) unless the petitioner has exercised diligence to develop the factual basis of his claims in state court.  <u>Cooper-Smith v. Palmateer</u>, 397 F.3d 1236, 1241 (2005).  In the instant case, it appears petitioner exercised the requisite diligence.  In his habeas application filed in the Superior Court, petitioner expressly asked for a court order requiring an evidentiary hearing on the issues presented in his petition and presented circumstantial evidence of the alleged no parole policy.

Counsel has attached a copy of the Superior Court habeas petition as an exhibit to his reply to the opposition to the motion for discovery, but did not include the exhibits supporting

---

[1] Respondent's position that petitioner waived any objection to the panel is not well-taken.  A review of the relevant portions of the hearing transcript disclose that petitioner agreed to proceed with the scheduled hearing subject to the objections he and his counsel made of record.  <u>See</u> Pet., Ex. K at 4:15-16:20.

1  that motion.  Reply, Ex. BB.  Nevertheless, the nature of the exhibits is clear from the body of
2  the petition and the exhibits submitted in support of the instant action.  First, petitioner explicitly
3  asked that the Superior Court schedule an evidentiary hearing.  Reply, Ex. BB, Points and
4  Authorities at 17.   He argued that the decision to deny parole was driven by "the illegal agenda
5  of the BPT" which was "orchestrated by former Governor Wilson and current Governor Davis."
6  Ex. BB at 5 (Ground 3).  He relied on a declaration from former BPT Chairman Alfred Leddy,
7  denominated Exhibit F and a statement from former Attorney General Dan Lungren, identified as
8  Exhibit G.  Id.  These exhibits correspond to Exhibits Q and R of the federal petition: in his
9  declaration, Leddy describes the alleged no parole policy put into place by Governor Wilson, see
10  Pet., Ex. Q; in a "Gubernatorial Digital Debate," Attorney General Lungren discusses the
11  radically reduced parole rates under Republican governors, id., Ex. R.  These exhibits supported
12  petitioner's claim of a no parole policy and his request for a hearing on that issue, among the
13  other issues presented in his state petition.  The petition was denied without the issuance of an
14  order to show cause or a hearing.  Pet., Ex. H.

15        The court need not determine at this time whether petitioner actually sought to
16  develop the facts below.  This question will be resolved if and when petitioner seeks to expand
17  the record.  In the meantime, he will be given leave to depose the Commissioners.

18  II.  Mootness

19        Respondent argues that petitioner's bias claim is moot because he has already
20  received a subsequent hearing before an unbiased panel.  See Opp'n at 4-5.  As a result,
21  respondent alleges that petitioner already has received the remedy he seeks.  Id.  In response,
22  petitioner alleges that the case is not moot because his subsequent hearing was not before an
23  unbiased panel.

24        "A case is moot when the issues presented are no longer 'live' or the parties lack a
25  legally cognizable interest in the outcome."  Powell v. McCormack, 395 U.S. 486, 496 (1969).
26  However, an exception has been made to the mootness doctrine for those cases that are capable

of repetition yet evading review. Murphy v. Hunt, 455 U.S. 478, 482 (1982). To qualify for this exception, two elements must be simultaneously present: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." Powell, 395 U.S. at 480.

The present case is similar to Sass v. California Board of Prison Terms, 376 F.Supp.2d 975 (E.D. Cal. 2005), aff'd, 461 F.3d 1161 (9th Cir. 2006),[2] in which this court determined that a prisoner's habeas corpus claim was not moot simply because he had subsequent parole hearings. In Sass, the respondent argued that ordering a new parole hearing would be of no consequence, because the petitioner had already received three subsequent hearings. Id. at 978-79. However, the Sass court found this assertion was without merit because it cannot be assumed that the subsequent hearings were conducted in accordance with federal law. Id. at 979. As in Sass, petitioner's claims are not moot.

Respondent's argument relies on the assumption that the more recent hearings were conducted in accordance with federal law. Even if respondent's arguments were correct, this case would fall squarely into the exception for injuries capable of repetition, yet evading review. The injury alleged is capable of repetition because a string of unconstitutional hearings would continually preclude effective judicial review if the instant application did not go forward. The evading review prong is satisfied because petitioner has been and likely will continue to be unable to receive full judicial review of his habeas application before a subsequent hearing takes

/////

/////

---

[2] The Court of Appeals' affirmance did not discuss the mootness question raised in the district court.

5

place.³  Hubbart v. Knapp, 379 F.3d 773, 778 (9th Cir. 2004) (challenge to SVP hearing not mooted by subsequent hearings; no chance for full litigation in federal court before new hearing).

III. Deliberative Process Privilege

  A. Deliberative Process Privilege as a Bar to Depositions

   Respondent argues the Commissioners should be immune from answering questions in a deposition because the deliberative process privilege applies.  See Opp'n at 6-7. This privilege "protects communications that are part of the decision-making process of a government agency." United States v. Lake County Bd. of Comm'rs, 233 F.R.D. 523, 525 (N.D. Cal. 2005).  The privilege is a qualified one, and applies only to communications that are 1) pre-decisional and 2) deliberative; it is limited to "communications designed to directly contribute to the formulation of important public policy." Id. at 526.  The privilege does not apply when the decision-making itself is attacked by a claim. Burka v. New York City Transit Authority, 110 F.R.D. 660, 667-68 (S.D.N.Y. 1986); United States v. Irvin, 127 F.R.D. 169, 174 (C.D. Cal. 1989).  The party asserting the privilege has the burden of proving its applicability. Lake County, 233 F.R.D. at 526.

   Respondent has not borne his burden of demonstrating that the privilege applies. Instead, he argues generally that because parole board members consider a wide range of factors and are the functional equivalent of judges, they cannot be asked to testify. McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002) (prisoner had no right to call parole board members to testify in a rescission hearing because "[e]ven in cases in which the question posed is whether a particular judge abused his or her discretion, we do not call the judge to the stand to analyze his or her deliberative process; rather, we examine the record.").  In this case, however, petitioner

---

  ³ In a footnote, respondent suggests that petitioner should file new a new petition challenging those Schwarzenegger-era decisions he believes are still tainted by a no parole policy.  Were he challenging those determinations directly, a new petition would be necessary. However, petitioner is raising this argument to defeat respondent's claim of mootness; he has not attempted to amend his petition to include challenges to subsequent denials.

seeks to question the board members about a "policy and/or practice of denying parole to all lifers," rather than for the reasons given at the time of his denial. Mot. at 7. Moreover, he is not seeking to question the board members about the formulation of the policy, but rather about its existence. Respondent has not shown that this line of inquiry is covered by the deliberative process privilege.

B. Deliberative Process Privilege and Document Requests

Respondent argues he should not be compelled to produce the documents petitioner requests because the information sought is "pre-decisional." See Opp'n at 11-12. Petitioner seeks documents disseminated from Governor Gray Davis or his office between January 4, 1999 and February 11, 2003, a period of time bracketing the challenged parole denial on March 20, 2002. This does not render the documents "pre-decisional" and thus off-limits for discovery purposes: it is not the formulation of the particular parole denial that is the "decision" at issue, but rather the formulation of the alleged "no parole" policy. Petitioner asks for material about the implementation of an-already formulated decision, which are by definition "post-decisional." See Mot., Ex. B. Respondent has made no showing that petitioner's request covers the time before any gubernatorial decisions concerning parole. Again, he has not borne his burden of showing that the deliberative process privilege applies.

IV. Mental Process Privilege

Respondent argues the mental process privilege should apply such that members of the BPT should not be questioned about their decision to deny petitioner parole. See Opp'n at 7-11.

/////
/////
/////
/////
/////

> Few courts have addressed the mental processes privilege which protects the "uncommunicated motivations for a policy or decision." See North Pacifica, LLC v. City of Pacifica, 274 F.Supp.2d 1118, 1122 (N.D.Cal. 2003) (distinguishing this privilege from the deliberative process privilege which protects communication). However, those courts consistently have determined that the "mental process privilege is 'inextricably intertwined' with the deliberative process privilege." United States v. Denlinger, No. S86-51, 1989 WL 516267, at *5 (N.D.Ind.1989) (quoting Carl Zeiss Stiftung v. V.E.B., Carl Zeiss, Jena, 40 F.R.D. 318, 326 (D.D.C.1966)). See also North Pacifica, 274 F.Supp.2d at 1122. The mental processes privilege appears only to apply when the official decision is legislative or adjudicative in nature.

Lake County, 233 F.R.D. at 527.

Respondent argues decisions made by the BPT are analogous to those made by judges, and should be afforded the same protection. See United States v. Morgan, 313 U.S. 409, 422 (1941) (Secretary of Agriculture could not be questioned about how he reached his conclusions in an order fixing the price of commodities because the Secretary's decision was akin to that of a judge's decision in a judicial proceeding); United States v. Roebuck, 271 F.Supp.2d 712 (D.C.V.I. 2003) (mental processes privilege invoked when defendants sought to question a judge).

The Ninth Circuit has held that parole board members are entitled to "absolute quasi-judicial immunity for decisions 'to grant, deny, or revoke parole' because these tasks are 'functionally comparable' to tasks performed by judges." See Swift v. California, 384 F.3d 1184, 1189 (9th Cir. 2004) (citing Sellars v. Procunier, 641 F.2d 1295, 1303 (9th Cir. 1981)). It follows that the mental processes privilege should extend to situations presented by the instant motion.

Not all information sought by the petitioner, however, is protected by the mental process privilege. The privilege merely protects the Commissioners from answering questions that probe the reasons for the decisions they made. Lake County, 233 F.R.D. at 527. Petitioner is free to ask questions regarding any parole policies the Commissioners were aware of, but may not ask questions regarding how those policies affected their decisions.

Accordingly, IT IS HEREBY ORDERED that petitioner's August 8, 2007 motion for leave to conduct discovery is granted, subject to the sustaining of respondent's mental processes privilege objection as discussed above.

DATED: December 17, 2007.

_____
U.S. MAGISTRATE JUDGE

iron0912.dsc